IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| DONNA E. BUTTERICK, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | CIV-09-986-D |
| v. | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security Administration, | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423. Defendant has answered the Complaint and filed the administrative record (hereinafter TR___), and the parties have briefed the issues. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the Commissioner's decision be affirmed.

I. Background

On August 15, 2005, Plaintiff protectively filed her application for benefits. Plaintiff asserted that she became disabled on February 1, 2005, due to "breathing, walking, stress,

1

tendinitis, stomach problems." (TR 132). Plaintiff alleged she stopped working on May 25, 2005, because she "could no longer stand working with back" and she "ache[d] . . . everyday." (TR 132). Plaintiff described previous work as a cashier, desk clerk, department store manager, and cook. (TR 133, 139).[1] She described her usual daily activities on forms supplied by the agency in August 2005 (TR 147-154) and later in October 2006 (TR 167-179).

In these reports, Plaintiff indicated she did not drive due to poor vision and she could not walk far due to bone spurs and breathing problems. Plaintiff stated she performed no household chores and did no cooking, no grocery shopping, had no hobbies, and did not pay bills. (TR 169-170). Plaintiff related that she was unable to perform these activities because she had no energy, had difficulty breathing, and was unable to concentrate. Plaintiff indicated she went outdoors "very little" and her only social activities were talking on the telephone with her children and grandchildren and attending doctors' appointments (TR 170, 171). Plaintiff stated that her inability to "breathe well" limited her ability to lift, squat, bend, stand, walk, kneel, climb stairs, and concentrate. (TR 172). Plaintiff related that she did not handle stress well and that she "stay[ed] in bed most of [the] day" due to stress and depression. (TR 173). Plaintiff indicated she wore eyeglasses prescribed for her in 2005. (TR 173).

Later, Plaintiff identified additional impairments due to surgery in August 2005 to

---

[1] Plaintiff listed "Mother" "since Feb. 1977" as one of her previous jobs.

repair a detached retina, increased depression beginning in September 2005, "[l]oose teeth," a sinus infection, constant nausea and inability to eat, pain in her neck, shoulder, and knee, and severe anxiety. (TR 159, 179). Plaintiff's earnings record reflects Plaintiff had no or negligible FICA earnings in the years 1975 through 1984 and 1987 through 1998. (TR 124).

Plaintiff's application was administratively denied. (TR 68, 69). At Plaintiff's request, a hearing *de novo* was conducted before Administrative Law Judge Keltch ("ALJ") on May 21, 2008. At this hearing, Plaintiff, a vocational expert, and a medical expert testified. Plaintiff stated she was 49 years old, had a tenth grade education, and last worked in May 2005. Plaintiff testified that she had been undergoing counseling with a parish counselor for approximately eight months. Plaintiff testified she took medications, including an inhaler and nebulizer treatments, for her chronic obstructive pulmonary disease ("COPD"). Plaintiff stated she had shortness of breath due to COPD with walking and climbing stairs, although her doctor had advised her to walk. She stated she could walk about one-half mile.

Plaintiff stated her ability to walk was also limited by bone spurs on her heels. Although surgery was recommended for this condition, Plaintiff stated she had received no treatment for the bone spurs since September 2005. Plaintiff estimated she could stand for 10 minutes. Plaintiff testified she had no problem with sitting and she spent most of her days sitting. Plaintiff stated that her husband or her sister drove her to her doctors' appointments 100 miles from her home. Plaintiff described "salt and pepper looking spots" from "tobacco dust" in her eyes which limited her vision, particularly at nighttime and in bright lighting. (TR 43). Plaintiff testified she had stopped driving voluntarily two years before because she

saw "spots in front of [her] eyes." (TR 51).

Plaintiff stated that medications controlled her acid reflux disease. Plaintiff testified she had tendinitis in her hands and wrists, causing pain in the palms of her hands up to her shoulders, and that she was last treated for tendinitis prior to 2005. Plaintiff stated she had arthritis in her neck and down her spine causing pain, although she was not taking any medication for this condition. (TR 46). Plaintiff stated that her medications were either provided free by her treating clinic or by the drug manufacturer. Plaintiff testified she smoked about ten cigarettes per day and had been advised by her doctors to quit smoking. Plaintiff stated that she smoked when she was depressed, that her depression medication was not helpful, and that she was unable to take her depression medication as prescribed because she could not afford it. During the day, Plaintiff stated she did not "do anything" other than make her bed and did not engage in any social activities. (TR 54).

In a decision entered December 9, 2008, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. (TR 7-13). The agency's Appeals Council declined to review this decision (TR 1-3). Plaintiff now seeks judicial review of the final decision of the Commissioner embodied in the ALJ's determination.

II. Standard of Review

Judicial review of this action is limited to determining whether the Commissioner's decision is based upon substantial evidence and whether the correct legal standards were applied. Emory v. Sullivan, 936 F.2d 1092, 1093 (10th Cir. 1991). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere

4

conclusion." Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992). Because "all the ALJ's required findings must be supported by substantial evidence," Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999), the ALJ must "discuss[ ] the evidence supporting [the] decision" and must also "discuss the uncontroverted evidence [the ALJ] chooses not to rely upon, as well as significantly probative evidence [the ALJ] rejects." Clifton v. Chater, 79 F.3d 1007, 1010 (10th Cir. 1996). The court may not reweigh the evidence or substitute its judgment for that of the Commissioner. Hamilton v. Secretary of Health & Human Servs., 961 F.2d 1495, 1498 (10th Cir. 1992). However, the court must "meticulously examine the record" in order to determine whether the evidence in support of the Commissioner's decision is substantial, "taking into account whatever in the record fairly detracts from its weight." Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004)(internal quotation omitted).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. See 20 C.F.R. §404.1520(b)-(f) (2009); see also Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005)(describing five steps in detail). The decision in this case was made at the fifth step of the sequential analysis. Where a *prima facie* showing is made that the plaintiff has one or more severe impairments and can no longer engage in prior work activity, "the burden of

proof shifts to the Commissioner at step five to show that the claimant retains sufficient residual functional capacity (RFC) to perform work in the national economy, given [the claimant's] age, education, and work experience." Grogan, 399 F.3d at 1261; accord, Channel v. Heckler, 747 F.2d 577, 579 (10th Cir. 1984).

III. ALJ's Reliance on Testimony of Medical Expert in Establishing RFC for Work

Following the established sequential analysis, the ALJ found at step one that Plaintiff had not worked since her alleged onset date of February 1, 2005. At step two, the ALJ found that Plaintiff had severe impairments due to major depression, generalized anxiety, phobia of spiders, polysubstance abuse disorder (in remission), and hyperactive airway disease. At step three, the ALJ found that Plaintiff's impairments were not presumptively disabling under the agency's Listing of Impairments. At the fourth step, the ALJ found that despite her impairments Plaintiff had the residual functional capacity ("RFC") to perform work at the light exertional level that did not require more than minimum public contact, did not require complex tasks or assignments or more than occasional detailed work, and provided a work environment free of dust, fumes, and odors. (TR 9).

In her first contention, Plaintiff asserts that the ALJ improperly relied on the medical expert's administrative hearing testimony in establishing Plaintiff's RFC for work. At the fourth step of the evaluation process required of administrative adjudicators, the ALJ is required to determine whether the claimant retains the RFC to perform the requirements of all past relevant work. The claimant bears the burden of proving an inability to perform the duties of the claimant's past relevant work. See Andrade v. Secretary of Health & Human

Servs., 985 F.2d 1045, 1051 (10th Cir. 1993). At this step, the ALJ must "make findings regarding 1) the individual's [RFC], 2) the physical and mental demands of prior jobs or occupations, and 3) the ability of the individual to return to the past occupation, given his or her [RFC]." Henrie v. United States Dep't of Health & Human Servs., 13 F.3d 359, 361 (10th Cir. 1993).

The ALJ's decision reflects consideration of the medical evidence, the reports of the consultative psychologist and consultative physician who examined Plaintiff, the opinions of the state agency medical consultants who reviewed the record, the testimony of the medical expert ("ME") who appeared at Plaintiff's hearing, and Plaintiff's testimony and statements in the record. At Plaintiff's hearing, a clinical psychologist, Dr. Bower,[2] appeared as an ME and summarized Plaintiff's mental health treatment and diagnoses. Responding to the ALJ's query concerning work-related limitations that Plaintiff would have as a result of her mental impairments, Dr. Bower testified that appropriate mental work-related limitations would include minimal public contact and some detailed but no complex job tasks.

Plaintiff contends that the ME's testimony cannot provide substantial evidence to support the ALJ's RFC finding because "during the hearing, neither the ALJ nor the medical expert had any medical evidence past Exhibit 14F" and therefore the ME's "opinion is not

---

[2]The ALJ identified the ME as Dr. "Dian L. Bower" in his decision, although the hearing transcript identified the ME as "Dr. Diane Bauer." (TR 7, 14). Solely for convenience, the undersigned has used the spelling of the ME's name as it appears in the ALJ's decision.

based upon substantial evidence in the record." Plaintiff's Brief, at 5-6.

Plaintiff cites to no legal precedent supporting her assertion that an ME must have reviewed a claimant's entire medical record prior to testifying at a social security claimant's administrative hearing, and no such authority has been found. At the hearing, Plaintiff's records, identified by the ALJ as Exhibits 1A through 14F, were received into evidence without objection. (TR 18, 22). The ME testified that she had reviewed these medical records, which included the report of the consultative psychological examiner, Dr. Kahoe, and the records of Plaintiff's treating physician, Dr. Winn. Plaintiff's attorney indicated at the hearing that Plaintiff's recent medical records had been submitted by his office to the agency, but the ALJ noted there were no additional exhibits in the record at that time. (TR 21).

Plaintiff contends that "submitted to the ALJ prior to the hearing were Exhibits 15F through 23F . . ." Plaintiff's Brief, at 5-6. This is a misleading assertion. The medical records (identified as Exhibits 15F through 23F in the record) that Plaintiff asserts were submitted to the agency prior to the hearing are largely duplications of other documents appearing in the Plaintiff's medical record in Exhibits 1 through 14F. (Cf. Exhibit No. 13F with Exhibit No. 15F). Moreover, the ALJ stated in his decision that he had reviewed the "entire record" before rendering his decision. (TR 9). Plaintiff does not assert that the ALJ did not review the record.

Plaintiff does not point to any particular medical evidence as inconsistent with the ME's testimony concerning Plaintiff's mental work-related limitations. Indeed, much of the

8

record Plaintiff complains was not considered by the ME contains evidence entirely consistent with the ME's testimony. Plaintiff's treating physicians noted in July 2008 that Plaintiff exhibited a "good mood" and was "more upbeat today, not tearful," noted in August 2008 that Plaintiff "did not appear depressed" (TR 543) and noted in December 2008 that she exhibited "much improved demeanor" and was "more interactive, happy" on her antidepressant medications. (TR 524). Thus, no error occurred with respect to the ALJ's reliance on the ME's testimony.

In her argument, Plaintiff specifically asserts the ME's testimony could not provide substantial evidence to support the ALJ's RFC finding because the ME had not reviewed the "treatment notes from the Claimant's counselor, Joe Froehle." Plaintiff's Brief, at 6. Plaintiff's reliance on these private counselor's notes as evidence of mental health treatment borders on the frivolous. Plaintiff testified at the hearing that she had seen a counselor associated with a church approximately eight to ten times during the previous eight months. (TR 29). Plaintiff's attorney handed the ALJ a copy of some "notes" allegedly prepared by the counselor, and the ALJ described the notes as handwritten "memory joggers" indicating the presence of some anxiety and depression but no diagnoses, and Plaintiff admitted that this counselor had not prescribed any medication and was not a doctor. (TR 30-31, 35). These sketchy, handwritten notes purportedly prepared by Plaintiff's private counselor, identified as Exhibit 21F in the record, indicate Plaintiff and her husband sought counseling through a church-related counseling service and were seen by the counselor on November 7, 2007, November 18, 2007, December 17, 2008, January 16, 2008, January 30, 2008, and March 18,

9

2008. (TR 510-515). No mental status examinations or mental health treatment are reflected in these notes.[3] The ALJ did not err in failing to provide these notes to the ME for the ME's review prior to her testimony. Nor was it improper for the ALJ to rely on the ME's testimony concerning mental work-related limitations in establishing Plaintiff's RFC for work. Plaintiff has not suggested that the ME was not qualified to provide an expert opinion at the hearing or that any evidence in the record is inconsistent with the ME's testimony. This contention is without merit.

IV. Consideration of Treating Physician's Opinion

Plaintiff asserts that there is not substantial evidence to support the ALJ's decision because the ALJ did not acknowledge the opinion of Plaintiff's treating podiatrist, Dr. Aaron. When an ALJ considers the opinion of a disability claimant's treating physician, the ALJ must follow a specific procedure in analyzing the medical opinion. The regulations define "medical opinions" as:

> statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions.

20 C.F.R. § 404.1527(a).

---

[3]Significantly, the counselor notes in November 2007 that "Donna drove 6 blocks here" and in January 2008 that "Donna pd[.] for boat engine repair." (TR 512, 514). These statements, if true, are inconsistent with Plaintiff's statements at her hearing that she had stopped driving two years prior to the hearing and that she was unable to purchase prescribed medications due to lack of funds.

Generally, an ALJ must give the opinion of an acceptable treating source controlling weight if it is both well-supported by medically acceptable clinical and laboratory diagnostic techniques and consistent with other substantial evidence in the record. Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting SSR 96-2p, 1996 WL 374188, at *2). The ALJ must also set forth specific, legitimate reasons for completely rejecting an opinion of an acceptable treating source. Id. at 1301.

Plaintiff's medical record contains a letter addressed "To Whom It May Concern" authored by Dr. Frank Aaron and dated September 26, 2005. (TR 188). In this letter, Dr. Aaron notes that Plaintiff had been his patient "since March 1, 2005" and that he had been treating her "foot problems which stem from the manner of standing and walking [sic]" and cause pain in "several areas of her feet." (TR 188). Dr. Aaron states that

> [a]s of her last office visit, [Plaintiff] is able to do some work on her feet, limited standing and walking, lifting heavy objects. However, prolonged time involved in these activities will cause [an] increase in the amount of pain and length of duration of that pain. Other activities such as sitting, hearing, speaking, traveling etc. are unrestricted as far as my examination is concerned.

(TR 188). The record contains only two office notes signed by Dr. Aaron showing that he treated Plaintiff on March 1, 2005, and March 8, 2005. These notes indicate that Plaintiff's big toenails on both feet were removed on March 1, 2005. (TR 190). A week later, Plaintiff returned for follow-up treatment. The notes reflect she was fitted for orthotic devices to help control her foot positioning during standing and walking, and her heels were injected with anti-inflammatory medication to treat bone spurs on both feet. (TR 189). The notes indicate

Plaintiff was advised to return to Dr. Aaron to retrieve the orthotic devices and to "return for re-injection if pain should warrant continuation of anti-inflammatory injections." (TR 189). However, there are no further notes of treatment of Plaintiff by Dr. Aaron, and Plaintiff admitted at her hearing that she had not been received treatment from Dr. Aaron since September 2005. Plaintiff also stated that despite the bone spurs she could walk one-half mile. The ALJ did not err in failing to consider Dr. Aaron's opinion as that of a treating physician given the brief duration of Plaintiff's treatment by this podiatrist. Moreover, Dr. Aaron's letter opinion indicates the opinion was directed to Plaintiff's condition "[a]s of her last office visit," which according to the record occurred in March 2005, prior to the time Plaintiff stated she stopped working. No error occurred in this respect.

V. <u>Step Five - Ability to Perform Other Work Available in the Economy</u>

"If the ALJ concludes [at step four] that the claimant cannot perform any of his past work with his remaining RFC, the ALJ bears the burden at step five to show that there are jobs in the regional or national economies that the claimant can perform with the limitations the ALJ has found him to have." <u>Haddock v. Apfel</u>, 196 F.3d 1084, 1088 (10th Cir. 1999). Plaintiff contends that the ALJ's step five decision is not supported by substantial evidence because the ALJ identified only sedentary jobs as being available for an individual with Plaintiff's RFC for work.[4]

---

[4] The regulations provide that an individual who is "closely approaching advanced age," has a "limited or less" education, has no transferable skills, and is limited to sedentary work must be found disabled at step five. 20 C.F.R. pt. 404, subpt. P, app. 2, § 201.10. The VE testified that Plaintiff's previous jobs did not provide her with skills that would be transferable to sedentary work

12

The VE testified at Plaintiff's hearing that an individual with Plaintiff's RFC for work and vocational characteristics could perform a "light, unskilled office helper" job and a "light, unskilled mail handling clerk in an office building" position. (TR 63). The VE also identified two sedentary, unskilled jobs of surveillance system monitor and semiconductor assembler as falling within this RFC for work. (TR 64-65).

In reaching the adverse step five finding, the ALJ acknowledged that

> [t]o determine the extent to which [the Plaintiff's mental work-related] limitations erode the unskilled light occupational base, the [ALJ] asked the [VE] whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and [RFC]. The [VE] testified that given all of these factors the individual would be able to perform the following jobs within the local and national economies respectively: Office Helper (sedentary unskilled) 800 and 65,000; and Semi-Conductor Final Assembler Conductor [sic] 600 and 57,000.

(TR 12-13). The ALJ's decision contains obvious typographical errors in describing the office helper position as "sedentary" and in identifying the "Semi-Conductor Final Assembler Conductor [sic]" position as falling within the Plaintiff's RFC for work. In the ALJ's decision, the ALJ obviously intended to rely on the VE's testimony to satisfy the Commissioner's step five burden of showing the availability of work for an individual with an RFC for a limited range of "light" work, not "sedentary" work. The VE described the "office helper" position as a job at the "light" exertional level, and the typographical error

---

with the mental work-related limitations identified by the ALJ. The ALJ recognized that when Plaintiff turned 50 years old (on May 30, 2008) she would be entitled to benefits under this rule if she were limited to sedentary work. (TR 63).

13

appearing in the ALJ's decision does not warrant a remand of the decision.

The ALJ also mistakenly notes in his decision that the VE identified the job of "Semi Conductor Final Assembler" as being available for an individual with the RFC for a limited range of "light" work. The VE's testimony as reflected in the hearing transcript reflects that the VE identified both the office helper position and a "mail handling clerk in an office building" position as being "light" jobs that an individual with Plaintiff's RFC for work could perform. The ALJ's decision contains an obvious typographical error in this respect that does not warrant a remand. The ALJ obviously intended to rely on the VE's testimony, and the VE identified two jobs as being available for an individual with Plaintiff's RFC and vocational characteristics. No reversible error occurred in this respect.

Finally, Plaintiff contends that the ALJ erred by failing to comply with the dictates of Social Security Ruling 00-4p. At step five, "the ALJ must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability." Haddock, 196 F.3d at 1091; see SSR 00-4p, 2000 WL 1898704, at *4 ("When vocational evidence provided by a VE . . . is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the VE . . . evidence to support a determination or decision that the individual is or is not disabled.").

Plaintiff does not suggest that a conflict exists between the VE's testimony and the United States Department of Labor's Dictionary of Occupational Titles ("DOT"). The VE's testimony was obviously based on information contained in the DOT. (TR 66). Thus, no

14

error occurred under Haddock or SSR 00-4p, and there is substantial evidence in the record to support the ALJ's step five decision.

RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING the decision of the Commissioner to deny Plaintiff's application for benefits. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before May 27th, 2010, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this 7th day of May, 2010.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE